United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDMUNDO CUEVAS,

    Plaintiff,

v.

RESILIENT FLOOR COVERING PENSION TRUST FUND,

    Defendant.

Case No. 18-cv-03741-PJH

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE**

Re: Dkt. Nos. 16, 17

Plaintiff Edmundo Cuevas's and defendant Resilient Floor Covering Pension Trust Fund's (the "Trust") cross-motions for summary judgment came on for hearing before this court on April 17, 2019. Plaintiff appeared through his counsel, Jim Keenley. Defendant appeared through its counsel, Michael Korda and Jessica Melgar. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendant's motion, GRANTS plaintiff's motion, and REMANDS the action for the following reasons.

**DISCUSSION**

**A.    Legal Standard**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Id. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. Id

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

Under the abuse of discretion standard, "a plan administrator's decision 'will not be disturbed if reasonable.'" Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929 (9th Cir. 2012) (quoting Conkright v. Frommert, 559 U.S. 506, 512 (2010)). "[A]n administrator's denial of benefits must be upheld if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." Moyle v. Liberty Mut. Ret. Ben. Plan, 823 F.3d 948, 957–58 (9th Cir. 2016) (internal quotation marks omitted).

A plan administrator's decision is unreasonable if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011). Administrators "abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that clearly conflicts with the plain language of the plan," or rely on clearly erroneous findings of fact. Johnson v. Tr.s of W. Conf. of Teamsters Pension Trust Fund, 879 F.2d 651, 654 (9th Cir. 1989); Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005). A finding is "clearly erroneous" when even though there is evidence to support it, the reviewing court

2

"on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Boyd, 410 F.3d at 1178.

**B.    Analysis**

On June 22, 2018, Cuevas filed this action against the Trust. Dkt. 1. The complaint has a single claim for relief under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that he was wrongfully denied benefits under the terms of the Resilient Floor Covering Pension Fund Pension Plan. Dkt. 17-1, Ex. 2 at ECF p. 90 (the "Plan").

In short, plaintiff challenges the Trust's Board of Trustees' (the "Board") decision to not credit time he worked early in his career as qualifying hours for his pension calculation. Cuevas argues that he worked as an "apprentice" during that time, and the hours he worked in that position would qualify him for additional pension benefits. However, he now argues that he was misclassified as a "floor covering handler," and hours worked in that occupation do not count toward pension eligibility.

Defendant seeks summary judgment that it did not abuse its discretion in denying benefits based on plaintiff's misclassification because plaintiff did not timely raise an argument that he was misclassified. Plaintiff seeks only a finding that defendant abused its discretion in handling his claims and appeals, and he seeks an order remanding the case for consideration of his misclassification claim in the first instance. An explanation from defendant addressing the merits of plaintiff's misclassification claim would make its conclusion clearer and more amenable to review.

The issues presented by the parties' cross motions center around a series of exchanges between plaintiff and the Board. The exchanges reveal that plaintiff's pension application was not pursued by plaintiff or handled by the Board even remotely in accordance with the procedures required by the Plan.

As an initial matter, Cuevas's[1] original December 5, 2016 application for a Regular

---

[1] Cuevas sent certain communications to the Board himself, and he was later represented by two different counsel. This order describes communications sent by both

3

Pension[2] was handled directly by the Board rather than being processed by the third-party administrator, as would have been the normal procedure. Dkt. 17-1 at ECF p. 6 (application). The application did not raise the argument Cuevas now relies upon, which is that he was misclassified. The parties agree that Cuevas's claim was denied, however no written denial was issued. The Board apparently told Cuevas that he likely qualified for an "Early Retirement Pension," and he was supposedly provided with documents to elect that type of pension. The primary evidence of the oral denial is a document prepared by the Board following its May 12, 2017 meeting. Dkt. 17-1 at ECF p. 4.

The Plan requires a written denial setting forth, in a manner calculated to be understood by the applicant, the "specific reason(s) for the adverse determination;" "[r]eference to the specific Plan provision(s) on which the denial is based;" a "description of any additional material or information necessary for the applicant to perfect the claim and an explanation of why such material or information is necessary;" and a "description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the applicant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review." Plan § 10.04(a). The Board did not issue a written denial, and the evidence indicates that the oral denial also failed to comply with the other requirements.

Moreover, the Plan was required to issue a written denial within 90 days from the date the application was filed. Id. The Plan did not provide a written denial—or a written notice of an extension—to plaintiff's December 5 application within 90 days, as was required. The first writing from defendant in the record came on May 22, 2017, which purported to deny plaintiff's "appeal." Dkt. 17-1 at ECF p. 35.

Deficient from the very beginning, the parties' procedural failures only compounded with time.

---

Cuevas and his representatives as communications from Cuevas.
[2] The Plan offers several different types of pensions, including a "Regular Pension," an "Early Retirement Pension," and a "Service Penson." See Plan §§ 3.02, 3.04, 3.12.

4

On April 26, 2017, Cuevas sent a letter to the Board stating that he was told he did not qualify for a "Regular Service Pension" and requested that the Board "reconsider and credit the hours worked" earlier in his career so he can "retire with a Regular Service Pension without penalties." Dkt. 17-1 at ECF p. 60. It is unclear whether Cuevas was requesting a "Regular Pension" (for which he applied in December), or submitting a new application for a "Service Pension." Again, he did not argue that he was misclassified.

On May 12, 2017, the Board held a meeting during which it considered Cuevas's April 26, 2017 letter. The Board treated Cuevas's April 16, 2017 letter as an "appeal" of an adverse benefit determination. Dkt. 17-1 at ECF p. 4.

On May 22, 2017, the Board sent a letter to Cuevas regarding its May 12, 2017 meeting. Dkt. 17-1 at ECF p. 35. The letter states that the Board reviewed Cuevas's appeal and "made the decision to deny your appeal in which you requested that hours worked as a Floor Covering Handler for the years 1990-1997 be recognized towards qualification for a Service Pension." Id. The letter further states that "This decision was made on the fact that during your employment as Floor Covering Handler . . . [employers] were not required to make any pension contributions on your behalf." Id. The letter then describes Cuevas's right under ERISA to bring an action in District Court within two years of the denial of his appeal. Id.

It appears that the Board considered Cuevas's April 26, 2017 letter to be an appeal of his December 5, 2016 application for a Regular Pension. Yet, the Board also appears to have treated Cuevas's April 26, 2017 letter as an application for a Service Pension, which it was denying. Even if the Board's May 22, 2017 letter is considered the written denial (of either Cuevas's December application for a Regular Pension or his April application for a Service Pension), the letter did not comply with the substantive requirements of a denial because it failed to reference the specific plan provisions at issue, describe additional information necessary to perfect the claim, and explain the Plan's review procedures. Plan § 10.04(a); see also 29 C.F.R. § 2560.503-1(g)(1); 29 U.S.C. § 1133.

Defendant concedes that the Board failed to provide required information in its denials. Dkt. 20 at 11–13. Defendant argues that those "technical" errors were not problematic because plaintiff generally understood that his claim was denied because his employment was not counted as credited service. Defendant further argues that plaintiff "was not harmed by the Plan's failure to include a description of the review procedures since he subsequently submitted an appeal through a legal representative in June 2017 and the Board heard that appeal at its August 2017 meeting." Dkt. 20 at 12. First, it is not clear that plaintiff's June 2017 appeal shows he understood the review procedures, because the Board later made clear that its May 2017 decision was "final and binding" and could "not be reconsidered for appeal." Dkt. 17-1 at ECF p. 226. Second, although defendant is right that the parties continued to exchange correspondence, the fundamental problems underlying this dispute stem from the fact that neither party followed the Plan's review procedures. As they veered further from the Plan's procedural requirements, the parties' exchanges continued to leave each other uncertain of their decisions, arguments, and reasoning.

After receiving the May 22, 2017 letter, Cuevas obtained legal assistance and sent a letter to the Board on June 23, 2017. Dkt. 17-1 at ECF p. 36. The June 23, 2017 letter was styled as an appeal of the May 22, 2017 decision, arguing that the Board should credit Cuevas's time working as a "Floor Covering Handler" with service credits under Section 6.02 of the Plan. Id. at 37. (The parties now agree that Section 6.02 of the Plan does not qualify Cuevas for a Service Pension.) Again, Cuevas did not argue that he was misclassified. Instead, he raised only arguments that he now agrees were rightly rejected by the Board.

Cuevas then engaged in a written exchange with Katherine McDonough, outside counsel for the Board, about his time as an apprentice or floor covering handler. It is omitted from this recounting of the parties' exchanges, although a review of plaintiff's exchange with McDonough shows that it did not clarify the parties' positions, but served mostly to further confuse each party as to the other's position. It appears that

McDonough introduced Cuevas for the first time to the idea that he may have been misclassified.

On August 11, 2017, the Board met and reconsidered their May 2017 denial. Dkt. 17-1 at ECF p. 34. On August 16, 2017, the Board sent a letter to Cuevas stating that the appeal was "thoroughly reviewed by the Board of Trustees and was denied in accordance with the rules of the Plan." Dkt. 17-1 at ECF p. 88. The letter also provided: "At this time, only if you have further documentation to submit which may help your case may you submit another appeal. If you have no further evidence you may file a civil action pursuant to Section 502(a) of ERISA." Id.

Defendant argues that any harm from its earlier deficient denials was cured by plaintiff's June 23, 2017 appeal and the Board's August 16, 2017 denial. Dkt. 20 at 12. But plaintiff submitted his June appeal without the benefit of a written denial, which would have explained what Plan provisions the Board believed supported its denial and what information could have cured the deficiency. The initial denial is required to provide such information so the parties can have a meaningful exchange and so the applicant can attempt to correct problems on appeal. Here, the Board only issued a completely-deficient oral denial followed by summary written denials of "appeals".

Moreover, the Board informed plaintiff that his April 26 appeal and their May 12 denial was the "final and binding" decision. Dkt. 17-1 at ECF p. 226. Given that representation, it is hard to credit defendant's argument that the parties continued to have a meaningful back-and-forth through ongoing "appeals" during June and August.

Finally, on November 28, 2017, Cuevas sent the Board a packet of information he hoped they would consider at their December 1 meeting. Dkt. 17-1 at ECF p. 190. (Cuevas had also sent some materials on August 18, 2017. Dkt. 17-1 at ECF p. 208) After the drawn-out, iterative application and appeals process described above, this was the first time Cuevas presented the Board with any argument or evidence attempting to show that he was misclassified.

On December 5, 2017, the Board sent a letter to Cuevas—the final communication

United States District Court
Northern District of California

1  in the record. Dkt. 17-1 at ECF p. 226. The Board wrote that it "reviewed" the
2  "documentation" Cuevas submitted in his August 18 and November 28 communications.
3  However, "the issues raised in the November 28, 2017 letter and August 18, 2017 email
4  have not been considered by the Trustees and your appeal stands as rejected." Id. The
5  Board also stated that the Board's decision at its May 12, 2017 meeting to deny Cuevas's
6  claim was an "appeal denial decision [that] was final and binding on all parties. Thus this
7  matter has been resolved and may not be reconsidered for appeal." Id.

8  Plaintiff's November 28, 2017 appeal and the Board's December 5, 2017 denial
9  did not cure the procedural morass explained above. First, the deficiencies infecting the
10 earlier "appeals" also apply to the December 5 denial. But more importantly, the Board
11 did not treat plaintiff's submission as an appeal under the Plan. The Board explained in
12 clear terms that "the issues raised in the November 28, 2017 letter and August 18, 2017
13 email have not been considered by the Trustees and your appeal stands as rejected."
14 Dkt. 17-1 at ECF p. 226. Although the Board apparently looked over the materials
15 plaintiff submitted, the Board clearly did not treat plaintiff's correspondence as an appeal
16 under Section 10.04(b) of the Plan, which requires the Board to "take into account all
17 comments, documents, records and other information submitted by the claimant relating
18 to the claim without regard to whether such information was submitted or considered in
19 the initial benefit determination." Plan § 10.04(b). The Board cannot decline to
20 "consider" "issues" raised by the claimant on appeal. Compare Plan § 10.04(b) ¶ 4, with
21 Dkt. 17-1 at ECF p. 226.

22 Both parties to this action veered substantially from the Plan's procedural
23 requirements. Cuevas raised his misclassification argument, which is the only argument
24 he relies on today, for the first time in August 2017 after a number of rejected applications
25 or appeals. The Board never issued a denial in writing explaining the specific reasons for
26 its adverse determination, referring to the specific Plan provisions on which the denial
27 was based, or explaining what information was necessary for plaintiff to perfect the claim
28 and why it was necessary. Under these circumstances, the Board's denial of benefits

was an abuse of its discretion. As a result—and unsurprisingly—the record is insufficient for this court to review.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is DENIED based on the court's finding that defendant abused its discretion by not complying with the terms of the Plan when reviewing plaintiff's claims and appeals. Plaintiff's motion for summary judgment is GRANTED, and the action is REMANDED to the Board for consideration of plaintiff's application de novo, which must be conducted in compliance with the Plan's requirements. The court expresses no opinion on whether plaintiff's claim should be granted or denied upon review. The application plaintiff submits to the Board following this court's decision, explained on April 23, 2019 and in this order, shall be considered his initial application under the Plan's procedures.

**IT IS SO ORDERED.**

Dated: May 8, 2019

PHYLLIS J. HAMILTON
United States District Judge